## STIMPERT et al. v. BENSON & SON.

No. 16181—Opinion Filed Feb. 23, 1926.

Rehearing Denied July 6, 1926.

### Witnesses—Improper Cross-Examination — Collateral Facts.

It is error to allow the cross-examination of a witness to proceed beyond the scope of the direct examination of such witness, where such cross-examination involves an inquiry into collateral facts and transactions incapable of affording any reasonable presumption or inference as to the facts in issue.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Kay County; Claude Duval, Judge.

Action by Benson & Son, a copartnership, against G. G. Stimpert and R. E. Hess. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

M. L. Opperud, for plaintiffs in error.

Banks, O'Brien & McVey and Bellatti & Brown, for defendants in error.

Opinion by FOSTER, C. This was an action in replevin instituted in the district court of Kay county by the defendants in error, as plaintiffs, against the plaintiffs in error, as defendants, to recover the possession of certain personal property described in their petition and consisting of portions of a string of oil well drilling tools. Parties will be hereinafter designated as they appeared in the trial court.

Plaintiffs were drilling contractors operating near Augusta, in the state of Kansas, and they claimed that the property had been stored by them on a lease near Augusta, in the state of Kansas, about February 15, 1923, and that sometime between this date and May 10, 1923, it had disappeared, the exact date of the disappearance not being shown; that the tools were last seen on the lease the latter part of February, 1923, and that on May 10th thereafter a part of them were found to be missing. It was alleged that the defendants had possession of the property and were wrongfully detaining it; that they had made demand upon the defendants therefor, and demanded judgment for the return of the property, or for its value in case a return of the property could not be had.

The defendants were likewise drilling contractors operating in the Tonkawa field near Blackwell, Okla., and they filed their answer in the form of a general denial, and upon the issues thus raised the cause was tried to the court and a jury, resulting in a verdict and judgment in favor of the plaintiffs. After unsuccessful motion for a new trial the defendants gave notice of appeal, and the cause comes regularly to be heard in this court on appeal by the defendants from said judgment.

Two propositions are relied on by the defendants for a reversal of the judgment as follows: First, that the verdict is not sustained by the evidence, and, second, that the court erred in admitting evidence on the part of the defendants in error.

Upon the first proposition it is sufficient to say that the plaintiffs rested their claim of right to recover the property upon certain marks of identity, which enabled them to distinguish the property as their own. The trial of the case largely revolved around

the controverted question of the existence and sufficiency of these identifying marks. It is the contention of the defendants since the plaintiffs had no individual marks on the property, by which they could identify it, plaintiffs were forced to rely upon the general resemblance of the property found to their own property, and that such identification was not sufficient to entitle them to recover. While the propositions argued and discussed under this assignment of error are not free from difficulty, we cannot say that the trial court erred in submitting the case to the jury, if the ruling of the trial court upon other law questions presented during the trial had been free from error.

This brings us to the second proposition: Error is predicated upon the action of the trial court in permitting the plaintiffs, over defendants' objection, on cross-examination of the defendant Hess, to inquire concerning a transaction had with one Ralph Ewing sometime in May, 1923, for the purchase of certain drilling tools, other than those in controversy in the pending suit, which had apparently been stolen. It is contended by the defendants that the inquiry on cross-examination related to a matter beyond the scope of the direct examination, and under the rule that the cross-examination should be confined to circumstances connected with the matters testified to in the direct examination, the cross-examination was improper. In our view of the case, however, the correct answer to the question turns on whether or not the trial court abused its discretion in permitting the cross-examination to proceed in the manner indicated. In order to determine this question, it will be necessary briefly to review some of the evidence as disclosed by the record before us.

It appears that sometime in May, 1923, some Kansas parties, located some seven or eight miles from where the defendants had stored their tools, recovered some tools in the Tonkawa field. These tools had been recovered and returned to the Kansas field shortly after the plaintiffs had discovered the loss of their own tools. The Kansas authorities were endeavoring to apprehend the parties responsible for the theft of the recovered tools, and the sheriff secured the consent of one L. E. Wills, an employee of the plaintiffs, to accompany him to Oklahoma for the purpose of identifying, if possible, the person who was supposed to have stolen the recovered goods as Bill Irwin, and who was supposed at that time to be in Oklahoma, around the oil fields at Tonkawa. Wills accompanied the sheriff to Tonkawa, but

Bill Irwin, the supposed thief, was never found. While there Wills claimed that he had located the tools in controversy in the possession of the de.endants, and proceeded to seize them under a writ of replevin. In a conversation with Mr. Hess, one of the defendants, he learned that Hess had some time in May, 1923, attempted to purchase some drilling tools from a man by the name of Ralph Ewing, but before the transaction was concluded some Kansas parties appeared and identified the tools as their own, and that after he had recovered from the seller his check for $372, issued in payment for the tools, and while he was in the act of turning the seller over to the authorities, the seller escaped from custody, and had not been seen or heard of since. It was further disclosed by Hess in the conversation. that Ralph Ewing, with whom he had the transaction in May, was the same party from whom he bought the tools in controversy. It was on the testimony of L. E. Wills that the plaintiffs relied for the identification of the tools in controversy as their own.

On cross-examination the witness, Wills, in answer to questions propounded answered as follows:

"Q. Do you claim that the man that stole your tools was Irwin? A. I couldn't say that he was the man that stole these other tools, I suppose so. Q. Well, you don't know whether he is the man that stole the other tools? A. No, sir. Q. Well, how does your identification affect that man at all with reference to that particular property? A. I don't know as it does. * * * Q. You stated, did you not, that Bill Irwin stole these tools? A. No, I couldn't say as to those, he told me, Mr. Hess told me that it was the same man that he had in the car and tried to catch. Q. Well, did you see that man? A. I did not. Q. Did you see the man he claimed sold Hess and Stimpert any tools? A. I did not. Q. So then you don't know who the man was that stole the tools? A. No, sir. Q. You couldn't say definitely whether that man had brought the tools from Kansas or from Covington? A. I couldn't say that he had. * * * Q. Would you say Bill Irwin did sell them to them? A. I can't say that he did. Q. Did you see the man himself? * * * A. Not Bill Irwin. Q. If you had seen him you would have known him? A. Yes. Q. Do you know whether or not Bill Irwin took these things in question out of Kansas? A. I couldn't say that he did."

The defendants both testified that they bought the tools in controversy from a man by the name of Ralph Ewing, who claimed to be a driller operating in the Tonkawa field; that the tools in controversy were delivered in a "Masters" truck, owned by parties operating a transfer business in the

Tonkawa field, and that they frequently saw Ralph Ewing after the tools were unloaded on February 1, 1923, and during the pendency of the negotiations for the purchase thereof, covering a period of some 60 days; that during this time defendants frequently conversed with him and saw him conversing with other responsible persons operating in the Tonkawa field.

It is clear to us, from a very careful examination of the evidence introduced by them, that the plaintiffs rested their case upon their ability to identify the property in controversy as their property, rather than upon the claim that the property was stolen from them by Bill Irwin and disposed of to the defendants by him under an assumed name. The witness, Wills, upon whom the plaintiffs relied to make out their case, did not claim that Bill Irwin was the man who stole the tools which the Kansas parties recovered in May, or that he was the man who stole the property in controversy from the plaintiffs and disposed of it to the defendants under an assumed name.

We are not unmindful of the rule that wide latitude is usually allowed in the cross-examination of a witness by the adverse party, where the credibility of the witness has been drawn in question and the scope of the cross-examination is designed to throw light on the character and veracity of such witness. However, in the instant case, the plaintiffs did not contend that their property was stolen by Bill Irwin and that the defendants acquired the property from him. The inference, therefore, to be drawn from this line of evidence, was manifestly unfair to the defendants.

The effect of the cross-examination was to permit the jury to draw unfavorable inferences against the defendants from collateral and unrelated transactions, wherein the credibility or veracity of the witness had not properly been raised.

We think the trial court permitted the cross-examination to extend beyond proper bounds, and that the jury must have drawn unfavorable inferences against the defendants upon a collateral matter which had no proper place in the trial. In Hunt v. Jones, 98 Okla. 99, 224 Pac. 354, this court said in the syllabus:

"In an action by a real estate broker to recover a certain sum which he alleges defendant agreed to pay him as commission for procuring a purchaser, for a certain farm owned by the defendant, it is error to admit evidence of the terms of contract between the defendant and other real estate agents for the purpose of impeachment, or for any other purpose, in the absence of any evidence tending to show any connection between plaintiff's contract and the contracts of defendant with such other parties."

In the body of the opinion this statement from Oliver v. Morawetz (Wis.) 69 N. W. 977, is quoted with approval:

"Evidence of such collateral facts, incapable of affording any reasonable presumption or inference as to the facts in issue, simply tended to divert the minds of the jurors from the issue being tried, and hence to mislead them to the prejudice of the defendant."

See, also, Greenleaf on Evidence, vol. 1, section 52; T. S. Reed Grocery Co. v. Miller, 36 Okla. 134, 128 Pac. 271.

The evidence objected to, involving no legitimate inquiry as to the credibility or veracity of the witness, its admission tended only to discredit the defendants upon a collateral matter, and in our judgment the admission of such testimony on cross-examination was prejudicial to the substantial rights of the defendant, justifying a reversal of the case.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.